Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 10, 2009, which, insofar as appealed from, denied defendants-appellants ’ motion for summary judgment dismissing plaintiffs’ causes of action for breach of contract, breach of fiduciary duty and aiding and abetting *841 breach of fiduciary duty, unanimously reversed, on the law, with costs, and the motion granted. Order, same court and Justice, entered October 28, 2009, which, upon reargument, adhered to the July 10, 2009 determination that plaintiffs cannot recover damages for lost profits, unanimously affirmed, with costs. Appeal from order, same court and Justice, entered February 17, 2010, which, upon defendants-appellants’ motion in limine to preclude plaintiffs from offering certain evidence at trial, modified, sua sponte, the order of July 10, 2009 solely to the extent of dismissing the breach of contract cause of action, unanimously dismissed, without costs, as moot in light of our disposition of the appeal from the July 10, 2009 order.
As the motion court ultimately recognized in its order rendered on the motion in limine, the breach of contract claim is barred by the statute of frauds (General Obligations Law § 5-701 [a] [10]), as the e-mails relied on by plaintiffs demonstrate that the parties did not reach agreement to enter into a broker/ principal relationship or on the essential term of the putative broker’s compensation, and intended that any agreement reached be reduced to a formal writing (see Oui Cater, Inc. v Lantern Group, Inc., 71 AD3d 555 [2010]; Longer v Dadabhoy, 44 AD3d 425 [2007], lv denied 10 NY3d 712 [2008]).
Plaintiffs failed to raise a triable issue of fact with respect to the causes of action for breach of fiduciary duty and aiding and abetting same. The evidence does not support the complaint’s allegation that a relationship of trust and confidence giving rise to fiduciary duties preexisted the alleged brokerage agreement, which agreement, as noted above, failed to satisfy the statute of frauds. On this record, the most plaintiffs have shown is that the parties had engaged in a series of transactions in which, as a principal of plaintiffs admitted, defendants represented plaintiffs on a nondiscretionary basis, with no authority to bind plaintiffs to any deal without the latter’s “specific authorization.” This kind of nonagency relationship is not fiduciary in nature (see Celle v Barclays Bank P.L.C., 48 AD3d 301, 302 [2008] [“brokers for nondiscretionary accounts do not owe clients a fiduciary duty”]; Fesseha v TD Waterhouse Inv. Servs., 305 AD2d 268, 268-269 [2003]). The averments by a former executive for one of the defendant entities that he believed plaintiffs and their principal had placed full trust and confidence in him and relied on his superior knowledge and expertise not only is conclusory (see Batas v Prudential Ins. Co. of Am., 281 AD2d 260, 264-265 [2001]; Gaidon v Guardian Life Ins. Co. of Am., 255 AD2d 101, 101-102 [1998], mod on other grounds 94 NY2d 330 [1999]) but also purports to state a belief in reliance *842 by another who did not make averments to that effect. Nor do plaintiffs’ own “subjective claims of reliance on defendants’ expertise” suffice to establish a fiduciary relationship (Societe Nationale D’Exploitation Industrielle Des Taboos Et Allumettes v Salomon Bros. Inti., 251 AD2d 137 [1998], lv denied 95 NY2d 762 [2000]). Moreover, that defendants may have had superior knowledge of the particular type of investment products involved does not, without more, create a fiduciary relationship (see Batas, 281 AD2d at 264-265; Gaidon, 255 AD2d at 101-102), especially given that plaintiffs themselves are highly sophisticated business entities. The claim of a fiduciary relationship is further negated by the testimony of plaintiffs’ principal that “it’s not [his] contention that [defendants] weren’t allowed to” compete against plaintiffs for a business opportunity, although this competition is precisely the crux of the complaint.
In sum, on this record it could not reasonably be concluded that “[plaintiffs] repose[d] a high level of confidence and reliance in [defendants], who thereby exercise[d] control and dominance over [plaintiffs]” (People v Coventry First LLC, 13 NY3d 108, 115 [2009]). Nor would the evidence support a finding that there existed between these highly sophisticated parties “a higher level of trust than normally present in the marketplace between those involved in arm’s length business transactions” (EBCI, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005], citing Northeast Gen. Corp. v Wellington Adv., 82 NY2d 158, 162 [1993]). Rather, plaintiffs’ allegations of breach of fiduciary duty merely duplicate the breach of contract claim barred by the statute of frauds.
Since the fiduciary breach causes of action were not viable, the claim for resulting lost profits was properly dismissed. In addition, the record established that plaintiffs’ ability to realize profits from the allegedly usurped investment opportunity was contingent on certain conduct by third parties and authorization from a government-sanctioned oversight entity, both of which were highly uncertain and well beyond the scope of defendants’ influence or control (see Laub v Faessel, 297 AD2d 28, 30 [2002] [plaintiff asserting cause of action for breach of fiduciary duty “must establish that the alleged . . . misconduct w(as) the direct and proximate cause of the losses claimed”]). Concur—Saxe, J.P., Friedman, Nardelli, Moskowitz and Richter, JJ.